FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAR 13 AM 11:22
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ERIC HORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-023 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Eric Horne, ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence six of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

---

[1] The Court takes judicial notice that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case.

I.  **BACKGROUND**

Plaintiff protectively applied for SSI on August 31, 2010, alleging a disability onset date of February 1, 2010. Tr. ("R."), pp. 13, 59, 129-32. The Social Security Administration denied Plaintiff's applications initially, R. 61-64, and on reconsideration, R. 70-72. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on December 1, 2011. R. 28-52. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as Don K. Harrison, a Vocational Expert ("VE"). See id. On January 4, 2012, the ALJ issued an unfavorable decision. R. 10-22.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since August 31, 2010, the application date (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: back sprain, major depressive disorder, and a history of alcohol and cocaine abuse. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity to perform medium work[2] as defined in 20 C.F.R. § 416.967(c) except claimant cannot perform any work with a Specific Vocational Preparation greater than 2,[3] and should not work in a cashier environment or a public

---

[2]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[3]"Specific Vocational Preparation" is defined in the Dictionary of Occupational Titles as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See http://www.occupationalinfo.org/appendxc_1.html (from that page,

2

> environment. Claimant can have occasional contact with coworkers. The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> 5. Considering the claimant's age, education, work experience, residual functional capacity ("RFC"), and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including "hand packer" and work in the area of cleaning. (20 C.F.R. §§ 416.969 and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, from August 31, 2010, through January 4, 2012 (the date of the ALJ's decision).

R. 15-22.

When the Appeals Council ("AC") denied Plaintiff's request for review on February 2, 2012, R. 1-9, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of that adverse decision. Plaintiff argues that (1) the ALJ erred by failing to find that borderline intellectual functioning was not a severe impairment; (2) the ALJ erred by failing to evaluate Plaintiff's intellectual functioning under Listing 12.05(C); and (3) a remand is warranted in order to consider newly submitted medical evidence that he has included with his brief. (See doc. no. 15, p. 1 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed, and that the newly submitted evidence does not warrant remand. (See doc. no. 18 (hereinafter "Comm'r's Br.").) After the Commissioner filed his brief in support of his arguments, Plaintiff filed a reply brief in response to those arguments. (Doc. no. 19.)

---

select "II. Specific Vocational Preparation (SVP)"). A Specific Vocational Preparation of 2 indicates that preparation for the job should not extend "beyond short demonstration up to and including 1 month." Id.

3

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548

4

(11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. New Evidence

There is a threshold issue in this case as to whether the new evidence not included in the administrative record that Plaintiff has attached to his brief warrants remand for consideration of that evidence. The evidence in question is a psychological evaluation of Plaintiff administered by Dr. Marvin Long, Ed.D, a consulting psychologist, dated February 14, 2012. (See generally doc. no. 15-1.) Based on that date, and as acknowledged by Plaintiff (Pl.'s Br., p. 7), the evaluation was administered subsequent to the ALJ's unfavorable decision on January 4, 2012, as well as the AC's denial of Plaintiff's request for review on February 2, 2012. The evaluation itself demonstrates that Dr. Long conducted a number of tests intended to gain information concerning Plaintiff's "mental status [and] general cognitive, academic and adaptive levels." (Doc. no. 15-1, p. 2.) In particular, Dr. Long sets forth in his evaluation his finding that Plaintiff has a full-scale IQ of 65, which is within the "extreme low range," and additionally diagnoses him as within the "Borderline

5

Intellectual Range" (id. at 5, 9), although he notes elsewhere that Plaintiff's "performance on the concept formation activities brings out no indications of thought disturbances or true mental retardation" (id. at 7). Dr. Long also states that, during the evaluation, Plaintiff was "encouraged and reinforced to do his best" and that, "for the most part," Dr. Long "got adequate cooperation but very slow processes" from Plaintiff. (Id. at 5.)

Plaintiff contends that his case should be remanded to the ALJ for proper consideration of the new evaluation pursuant to sentence six of § 405(g). (Pl.'s Br., p. 14.) Under Eleventh Circuit law, remand under sentence six may only be had when new evidence is presented in the first instance to the district court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007). Here, given that Dr. Long's evaluation did not exist until following the AC's denial of Plaintiff's request for review, it was not presented to either the ALJ or the AC, and is only now being considered for the first time. Thus, Plaintiff's reliance on sentence six in arguing that the new evidence justifies remanding this case is proper.

Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Soc. Sec., 457 F. App'x 850, 853 (11th Cir. 2012) (*per curiam*) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable."). Specifically, in order to demonstrate that remand is appropriate, a claimant must show that: "(1) there is new,

6

noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (*per curiam*) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

### 1. First Prong

Here, the Court finds that Plaintiff has satisfied all three prongs of the above test and that, accordingly, the case should be remanded pursuant to sentence six for consideration of Dr. Long's evaluation. First, the evaluation is clearly new and noncumulative.[4] It is new in the sense that it did not exist until shortly after the ALJ returned his unfavorable decision and the AC denied Plaintiff's request for review, and it noncumulative in the sense that it provides – for the first time in this case – a recent IQ score for Plaintiff that is not expressly qualified by a doctor's statement that the score is not representative of Plaintiff's true functioning, a source of evidence that the ALJ explicitly found lacking, R. 15. See Caulder, 791 F.2d at 877 (finding new evidence noncumulative where it provided a comprehensive medical evaluation to replace an earlier evaluation concerning the same subject that the ALJ had found inadequate). As extensively noted by the ALJ in his decision, the only recent psychological evaluation containing an IQ score currently in the record, administered by Dr. John C. Whitley, Ph.D, on January 25, 2011, contains test results showing that Plaintiff has a full-

---

[4]Notably, although the Commissioner directly contests whether the evaluation satisfies the second and third prongs of the test, he does not address the evaluation in relation to the first prong. (Comm'r's Br., pp. 12-14.) Therefore, the Court presumes that he concedes that, as explained herein, the evaluation satisfies the first prong.

7

scale IQ of 53.[5] R. 16, 18-19, 20, 387. However, the ALJ also noted that the evaluation contains a statement by Dr. Whitley that the "test results are felt to be an underestimation of [Plaintiff's] true functioning" due to his poor effort. Id. Given that, as explained in more detail infra, Dr. Long's evaluation contains no such disclaimer, Dr. Long's evaluation fills in a gap in the evidence that the ALJ repeatedly pointed out, and it is thus noncumulative. Therefore, Dr. Long's evaluation easily satisfies the prong requiring the evidence to be both new and noncumulative. Enix, 461 F. App'x at 865.

### 2. Second Prong

Next, Dr. Long's evaluation satisfies the second prong of the test requiring that the evidence be material such that there is a reasonable possibility that it would change the ALJ's decision. Although the Commissioner argues that Plaintiff has failed to show that the ALJ "would reasonably have credited Dr. Long's one-time evaluation over the other evidence in the record that provides substantial evidence to support the ALJ's findings and conclusion that Plaintiff was not disabled" (Comm'r's Br., p. 13), the Court disagrees. Newly submitted evidence is material if it is relevant and probative of Plaintiff's condition. See Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988); Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987); Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985).

Here, considering that the new evidence submitted by Plaintiff has direct implications on the ALJ's findings at steps two and three of the sequential process, that new evidence is both relevant and probative of Plaintiff's condition. The ALJ considered a number of

---

[5]Although the ALJ also addressed psychological evaluations of Plaintiff performed by Dr. Thomas Reid Rumble, M.D., Dr. Joseph Garmon, Ph.D, and Dr. Damarys Sanchez, Psy.D, none of those evaluations contain IQ scores. R. 19-20, 404-07, 409-11, 634-39.

8

psychological evaluations and factors in determining at step two that, outside of major depressive disorder, Plaintiff does not have a severe impairment based on a psychological disorder. R. 15. In particular, the ALJ noted that "[Plaintiff's] borderline intellectual functioning is not a medically determinable impairment" and then went on to support that assertion by referencing the invalidity of Dr. Whitley's IQ test. Id. The ALJ further noted that Plaintiff's poor grades from elementary school through high school were not sufficient evidence of a cognitive impairment, primarily due to the absence of any valid "objective findings of any cognitive impairment in the record." Id. In fact, the ALJ summarized his findings on the issue by stating, "Because there are no objective findings corroborating claimant's allegations regarding this impairment, this impairment is not severe." Id. Notably, one of Plaintiff's primary arguments here is that the ALJ erred in failing to find that Plaintiff has borderline intellectual functioning that constitutes a severe impairment. (See Pl.'s Br., p. 11.)

At step three, the ALJ considered whether Plaintiff satisfied the criteria of Listings 12.04 and 12.09, each concerning mental impairments, but did not consider Listing 12.05(C), R. 16, one prong of which requires the provision of a valid full-scale IQ score of between 60 and 70. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Again, one of Plaintiff's primary arguments here is that the ALJ erred in failing to consider Listing 12.05(C). (See Pl.'s Br., p. 13.)

The essence of the Commissioner's argument concerning materiality appears to be that, first, Dr. Long qualified his evaluation of Plaintiff similar to the way that Dr. Whitley qualified his own evaluation. (Id. at 12-13.) More specifically, the Commissioner argues that

Dr. Long's statement that Plaintiff's "performance on the concept formation activities brings out no indications of thought disturbances or true mental retardation" (doc. no. 15-1, p. 7) indicates that the ALJ would not be inclined to credit Dr. Long's IQ test any more than he credited Dr. Whitley's test. (Comm'r's Br., pp. 12-13.) Unlike Dr. Whitley's evaluation, however, in which he expressly disclaimed the validity of the IQ test due to Plaintiff's poor efforts, Dr. Long has provided no such disclaimer in his evaluation, providing some indication that, while he may have some vaguely defined doubts as to the true measure of Plaintiff's mental capacity, he believes the IQ test to be the result of a legitimate effort on Plaintiff's part.[6] That being the case, Dr. Long's evaluation, through its provision of a valid IQ score, raises the possibility that the ALJ could arrive at a different result, especially considering that the ALJ appears to have based his finding that Plaintiff does not have borderline intellectual functioning in large part on the absence of a valid IQ score indicating the same.

The Commissioner further argues that, given that Dr. Long is a one-time examiner and that his evaluation "does not provide any insight into additional functional imitations beyond those already determined by the ALJ," there is no reason to believe that the ALJ would have reasonably credited Dr. Long's evaluation over the other evidence indicating that Plaintiff is not disabled. (Id. at 13.) While it is true that the ALJ cited to a number of factors

---

[6]Moreover, Dr. Long's statement concerning Plaintiff's failure to exhibit "true mental retardation" was not made in connection to Plaintiff's IQ score, but instead in connection to his performance on "concept formation activities," thus further indicating that Dr. Long believes the IQ score to be valid. (See doc. no. 15-1, p. 7.) Similarly, Dr. Long's statement that Plaintiff has "higher adaptive potential" based on his work history was made in connection to his academic test results, not to his IQ score. (Id. at 6.)

10

in explaining his reasoning in finding that Plaintiff was not disabled – including Plaintiff's poor effort on Dr. Whitley's IQ test and Dr. Whitley's statement concerning the same, Plaintiff's passage of a commercial driver's license examination, his activities of daily living, and his general lack of credibility, R. 16-20 – the fact remains that, in doing so, the ALJ repeatedly noted the invalidity of the IQ test. R. 16, 18, 19, 20. In fact, as noted above, the ALJ specifically asserted that, in the absence of a valid IQ test, "there are no objective findings of any cognitive impairment in the record." R. 16. Based on that comment and the ALJ's repeated references to the invalidity of Dr. Whitley's evaluation, it stands to reason that, per the language of the second prong, there is a reasonable possibility that a new evaluation containing a valid IQ score of 65 – which is within the "extreme low range" (doc. no. 15-1, p. 5) – could change the administrative result.[7] Enix, 461 F. App'x at 865.

Additionally, the Court disagrees with the Commissioner's argument that, based on Dr. Long's comment that Plaintiff does not exhibit "true mental retardation" (doc. no. 15-1, p. 7), there is "no need to remand for the ALJ to consider whether Listing 12.05(C)" applies.

---

[7]Similarly, although the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior," the ALJ did not undertake such an analysis in connection with the IQ score set forth in Dr. Whitley's evaluation. See Lowery, 979 F.2d 835, 837 (11th Cir. 1992). Rather, he specifically discredited that score due to Dr. Whitley's comment that the results of the IQ test were an underestimation of Plaintiff's true functioning. R. 15, 387. Thus, the ALJ's rationale in discrediting the IQ score in Dr. Whitley's evaluation cannot be imputed to his hypothetical analysis of the score in Dr. Long's evaluation, given that Dr. Long made no such comment and that the score in his evaluation thus appears to be valid, unlike the score in Dr. Whitley's evaluation. In other words, the ALJ's hypothetical analysis of the IQ score in Dr. Long's evaluation would involve a comparison of that score to other evidence in the record concerning Plaintiff's daily activities and behavior, per Lowery, whereas his analysis of the score in Dr. Whitley's evaluation did not involve such a comparison.

(Comm'r's Br., p. 13.) Listing 12.05(C) pertains to "Mental retardation," which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The Listing further provides: "The required level of severity for this disorder is met when ... [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when he "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery, 979 F.2d at 837.

Here, the Commissioner expressly concedes that the ALJ's finding that Plaintiff has "severe impairments," R. 15, effectively satisfies the second prong of 12.05(C), and that whether Plaintiff has satisfied 12.05(C) thus turns on whether he has provided valid IQ scores that fall within the requisite range. (Comm'r's Br., p. 10.) Moreover, one of Plaintiff's primary arguments here is that the ALJ erred in failing to consider 12.05(C) in his evaluation. (Pl.'s Br., p. 11.) As discussed extensively above, the ALJ found that the IQ score in Dr. Whitley's evaluation was invalid due Dr. Whitley's comment concerning Plaintiff's poor effort, lending credence to his decision not to address 12.05(C) in his opinion. In other words, in the clear absence of a valid IQ score that satisfied the requisite criteria for

12.05(C), that Listing need not have been discussed.[8] Now, however, Plaintiff has provided a valid IQ score of 65 – firmly within the requisite range – indicating that remand for consideration of 12.05(C) is entirely warranted. See Slater v. Astrue, No. 2:11-CV-372-TFM, 2012 WL 999799, at *19 (M.D. Ala. Mar. 23, 2012) (holding that, where plaintiff presented a valid IQ score and evidence of severe impairments, he raised a prima facie showing of mental retardation pursuant to Listing 12.05(C), and that remand was warranted to allow the ALJ to consider whether Plaintiff met the listing). Thus, again, there is a reasonable possibility that Dr. Long's evaluation could change the administrative result. Therefore, for the above reasons, Plaintiff has satisfied the second prong of the requisite test for remand pursuant to sentence six. Enix, 461 F. App'x at 865.

### 3. Third Prong

Finally, Plaintiff has also satisfied the third prong, in that the fact that the new evaluation did not exist at the time of the ALJ's and the AC's decisions constitutes good cause for Plaintiff's failure to submit it at the administrative level. While the Court recognizes the logic in the Commissioner's argument that simple nonexistence should *not* satisfy the good cause requirement (Comm'r's Br., p. 14), the single district court case to which he cites in support of that argument, Cumbess v. Astrue, Civil Action No. 5:07-CV-386 (CAR), 2009 WL 3064526, at *2 (M.D. Ga. Sept. 22, 2009), has not been reported for publication, cites to no authority in support of its position, and simply does not comport with the considerable amount of Eleventh Circuit opinion on the subject. See Cannon, 858 F.2d

---

[8]Notably, the Court need not address in detail Plaintiff's argument concerning the ALJ's failure to consider Listing 12.05(C), given that it is recommending that the case be remanded based on the new evidence.

at 1546 (holding that there was good cause for failing to present evidence because it did not exist at the time of the administrative hearing or the AC's denial of a request for review); Caulder, 791 F.2d at 878 (noting that "nonexistence of the evidence at the time of the administrative proceedings may constitute good cause"); Cherry, 760 F.2d at 1192 (finding good cause where new evidence containing an IQ score relevant to a determination of borderline intellectual functioning did not exist at the time of the ALJ's decision or the AC's denial of review); cf. Enix, 461 F. App'x at 863 (finding that plaintiff failed to show good cause where new evidence existed while her administrative appeal was pending before the AC but was not submitted). Accordingly, because Dr. Long's evaluation did not exist at the time of the administrative proceedings, Plaintiff has also satisfied the third prong of the test demanding that good cause be shown for failure to submit the evidence at the administrative level. Id. at 865.

Given that Plaintiff has shown that the new evidence provided – Dr. Long's February 14, 2012 evaluation – satisfies all three prongs of the requisite test for demonstrating that remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g), the case should be remanded so that the ALJ can consider the new evaluation and reevaluate Plaintiff's claim accordingly.[9]

---

[9]Notably, the Court need not reach all of Plaintiff's contentions in light of its determination that remand is appropriate based on the new evaluation. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all respects. For example, the entirety of the relevant evidence must be taken into account in determining the severity of Plaintiff's alleged impairments and in assessing Plaintiff's subjective complaints and RFC. See 20 C.F.R. § 416.920(e); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence six of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 18th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE